UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
UNITED STATES OF AMERICA,

                Plaintiff,

      -against-

ALLFIELD CONSTRUCTION &
REMODELING, INC. and
THOMAS FIELD,

                Defendants.
----------------------------------------------------X

**MEMORANDUM AND ORDER**
15-CV-0254

**APPEARANCES:**

**For Plaintiff:**

**ROBERT L. CAPERS,**
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201
By:    Mary M. Dickman, Assist. U.S. Atty

**HURLEY, Senior District Judge:**

Plaintiff United States of America ("Plaintiff") commenced this action to recover a debt due and owing from Defendants Allfield Construction & Remodeling, Inc. ("Allfield") and Thomas Field ("Field") based upon their obligations under business loan documents and a personal guaranty assigned to the United States Small Business Administration ("SBA"). Presently before the Court is Plaintiff's motion for a default judgment. As indicated below, that motion is granted**.**

## BACKGROUND

The following facts are taken from the Complaint ("Comp.") and the Exhibits thereto

("Ex.") and accepted as true for purposes of this motion.

## I. The Business Credit Application and Lending Agreement

On or about March 24, 2005, Allfield, duly executed and delivered to HSBC Bank a completed Business Credit Application ("the Credit Application"), for a business loan in the amount of $100,000.00. Comp. ¶ 5; Ex. 1. The Credit Application requested that the loan be issued at a fixed rate of interest, and made repayable over a term of seven years. *Id*. at p. 2.

The Credit Application stated that the prospective borrower acknowledged receipt of a Business Lending Agreement ("the Lending Agreement") issued by HSBC Bank. *Id*. at p. 3; Comp. ¶ 7; *see* Ex. 2. Pursuant to the terms of the Credit Application, execution of the Credit Application also obligated the borrower to the terms of the Lending Agreement. Comp.¶ 7; Ex. 1 at p. 3. The Lending Agreement included an acknowledgment that the borrower's obligations under the loan may be guaranteed by the SBA, and set forth the borrower's agreement to certain representations regarding its financial condition, as required by the SBA. Comp. ¶ 9; Ex. 2 at pp. 9-10. The Lending Agreement further provided that HSBC Bank would not be obligated to make a loan or credit available to the borrower until and unless HSBC Bank issues an Acceptance Letter (the "Acceptance Letter"). Comp. ¶ 10; Ex. 2 at p. 4.

On or about April 18, 2005, HSBC Bank executed the Acceptance Letter and provided it to the Defendants. Comp. ¶ 11; Ex. 3. The Acceptance Letter stated that HSBC Bank agreed to provide Defendant Allfield with a loan in the amount of $100,000.00, at an interest rate of 8.5 percent per annum, repayable over a term of 84 months. Comp. ¶ 12; Ex. 3. The Acceptance Letter identified the loan to Defendant Allfield as a "Small Business Administration (SBA) Guaranty."Comp. ¶ 14; Ex. 3.

**II.     The Personal Guarantee**

The Credit Application included an acknowledgment that any individual signing it had received a copy of the Lending Agreement and that such individual's execution of the Credit Application would constitute his unconditional personal guaranty of the indebtedness incurred by the borrower. Complaint ¶ 15; Ex.1 at p. 4. The Lending Agreement also stated that each individual signing the Credit Application unconditionally guarantees full payment of the debt, including interest and expenses, and performance of the borrower's obligations. Comp. ¶ 16; Ex. 2 at pp. 13-14. The Lending Agreement stated that the guarantor agreed that the lender may collect all amounts due and payable upon the debt without first giving notice of default or taking any action to collect from the borrower. *Id.* at p. 14. Defendant Field signed the Credit Application in the space marked "Authorized Signature (and as Guarantor)." Comp. ¶ 18; Ex. 1 at p. 4.

**III.    Disbursement of Loan Proceeds**

On April 15, 2005, the SBA issued an SBA Express Loan Authorization for the loan from HSBC Bank to Defendant Allfield, pursuant to which the SBA agreed to guarantee 50 percent of the $100,000.00 loan. Comp. ¶ 19; Ex. 4. On or about April 25, 2005, HSBC Bank disbursed the loan proceeds, in the amount of $100,000.00, to Defendant Allfield. Comp. ¶20; Ex. 5, at p. 2.

**IV.    Default in Repayment Obligations**

    **A.    First Default, Forbearance Agreement and Allonge**

On or about January 28, 2008, Defendant Allfield defaulted on its obligation to make repayment as required pursuant to the Acceptance Letter. Comp. ¶21; Ex.5, at p. 3. On or

3

about March 28, 2008, Defendant Allfield and Defendant Field, duly executed and delivered a Forbearance Letter Agreement to HSBC Bank. Comp. ¶22; Ex.6.

Pursuant to the Forbearance Letter Agreement, HSBC Bank agreed to forbear from exercising its right to accelerate the debt owing under the loan, in exchange for certain agreements from Defendant Allfield and Defendant Field, including the following:

> a. immediate payment of a portion of the outstanding indebtedness, and of HSBC Bank's legal fees;
>
> b. execution and delivery to HSBC Bank of an Allonge amending the terms of the loan;
>
> c. execution by Defendant Field and Cheryl Lynn Field of a mortgage upon their residence;
>
> d. acknowledgment that the principal amount owing toward the loan was, as of March 28, 2008, $69,332.95; and
>
> e. acknowledgment that neither Defendant Allfield nor Defendant Field have any claims of set-off, counterclaims or defenses to their obligations under the Forbearance Letter Agreement, the loan documents or the documents setting forth the terms of the guaranty.

Comp. ¶23; Ex. 6 at pp. 1-2.

On or about March 28, 2008, Defendant Field and Cheryl Lynn Field executed and delivered a mortgage upon their residence to HSBC Bank, as required by the Forbearance Letter Agreement. Comp. ¶ 24; Ex.7.

In the Allonge,[1] executed on March 28, 2008, by Defendant Allfield acting through Defendant Field, Allfield agreed to pay the outstanding balance owing upon the loan at the rate of $1,000.00 per month for a period of 97 consecutive months. Comp. ¶ 25; Ex. 8. The Allonge further stated that interest would accrue upon the loan at the rate of 8.5 percent per annum. Comp. ¶ 26; Ex. 8.

### B. Second Default in Repayment Obligations

Defendant Allfield failed to make the payment due on or about August 25, 2009, as required under the Allonge. Comp. ¶27; Ex.5 at pp. 3-4. During the period beginning on December 24, 2009, and ending on February 19, 2010, Defendant Allfield made payments toward the loan, in the total amount of $5,727.84, which was less than the amount it was required to pay pursuant to the Allonge. Defendant Allfield did not make any payment toward the loan obligation after February 19, 2010. Comp. ¶28; Ex.5 at pp. 3-4.

On or about November 21, 2010, HSBC Bank referred the debt to the SBA. Comp. ¶30; Ex.5 at p.1. The SBA elected to declare the entire unpaid balance of the principal sum that remains unpaid upon the debt to be immediately due and payable, together with fees and costs. Comp. ¶31.

On or about May 9, 2011, the SBA referred the debt to the Treasury's Financial Management Service ("FMS") for collection. Comp. ¶ 32. By letter dated May 9, 2011, FMS demanded that Defendant Allfield pay the outstanding balance owing within 10 days. Comp. ¶33; Ex. 9. FMS did not receive payment from, or on behalf of, Defendant Allfield. Comp. ¶ 34.

---

[1] An allonge is a piece of paper attached to a negotiable instrument, whose function is to provide more room on the instrument for indorsements.

The Treasury subsequently referred the debt to the Department of Justice for litigation. Comp. ¶ 35.

On August 7, 2013, HSBC Bank formally assigned to the SBA its interest in the mortgage given by Defendant Field and Cheryl Lynn Field, along with its interest in the underlying loan documents (the Business Credit Application, the Business Lending Agreement, the Acceptance Letter, the Forbearance Letter Agreement and the Allonge). Comp. ¶37; Ex. 7.

Based on the foregoing, Plaintiff asserts Defendants are liable to it in the principal amount of $54,381.46, together with fees owing to the Treasury in the amount of $16,314.44 and fees owing to the Department of Justice in the amount of $2,186.47, for a total of $72,882.37. Complaint Ex. 10.

## PROCEDURAL HISTORY

This action was commenced on January 16, 2015 and the summons and complaint were duly served on Allfield and Field. *See* D.E. 5. The defendant have failed to answer or otherwise respond, *see* D.E. 8, and the Clerk has noted Defendants' default, *see* D.E. 9. On March 19, 2016, Plaintiff filed its motion for default judgment.

## DISCUSSION

I. **Legal Standard - Default Judgment**

Motions for default judgments are governed by Rule 55 of the Federal Rules of Civil Procedure, which provides for a two-step process. *See* Fed. R. Civ. P. 55; *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504-05 (2d Cir. 2011). Initially, the moving party must obtain a certificate of default from the Clerk of Court. Fed. R. Civ. P. 55(a). Once the certificate is issued, the moving party may apply for entry of a default judgment. *Id.* Rule 55(b).

Where a default occurs, the well-pleaded factual allegations set forth in the complaint relating to liability are deemed true. *See Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp.*, 973 F.2d 155-58 (2d Cir. 1992). A plaintiff is not, however, entitled to a default judgment as a matter of right just because a party is in default. Rather, the court must determine whether the well-plead allegations establish liability as a matter of law. *See City of New York v. Mickalia Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011). In the event liability is established, the court must ascertain damages "with reasonable certainty." *Credit Lyonnais Sec., Inc. v. Alcanture*, 183 F.3d 151, 155 (2d Cir. 1999). A hearing need not be held; affidavits are sufficient as long as the Court endeavors to ensure there is a basis for the damages specified in the default judgment. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997).

## II. The Complaint and Exhibits Thereto Support Entry of Judgment

To obtain a judgment against a borrower who has defaulted upon a loan held by the SBA, the United States need only show the existence of the loan, the default in payment and the amount owing. *See United States v. McAllister*, 661 F. Supp. 1175, 1176 (E.D.N.Y. 1987) (granting summary judgment in favor of SBA where non-movant failed to contest the genuineness of loan documents).

In an action seeking a judgment based upon a guarantee for a loan held by the SBA, a prima facie case is established through proof of the following elements: (1) execution of the guarantee by the guarantor, (2) the principal obligation and terms of the guarantee, (3) the lender's reliance on the guarantee in extending monies to the borrower, (4) default by the principal obligor, (5) written demand for payment on the guarantee, and (6) the failure of the

7

guarantor to pay upon written demand. *United States v. DelGuercio*, 818 F. Supp. 725 (D.N.J. 1993).

All of the foregoing requirements have been meet in this case. Based on the terms set forth in the loan documents, Allfield and Field are indebted to the SBA, to whom the debt has been assigned. Moreover, the submissions are sufficient evidence to form the basis for an award of damages as follows: the principal amount of $54,381.46, together with fees owing to the Treasury in the amount of $16,314.44 and fees owing to the Department of Justice in the amount of $2,186.47, Ex. 10; *see* 31 U.S.C. §§ 3711(g)(6) and 3711(e)(1); 28 U.S.C. § 527; for a total of $72,882.37.

Moreover, having considered the willfulness of the default, the existence of a meritorious defense and prejudice, *see, e.g., Ferrara v. PJF Trucking LLC*, 2014 U.S. Dist. LEXIS 134095, *10-11 (E.D.N.Y. Aug. 14, 2014 (Report and Recommendation), *adopted by* 2014 U.S. Dist. LEXIS 133723 (E.D.N.Y. Sept. 22, 2014). the Court finds entry of a default judgment is appropriate. Where, as here a defendant "is continually and 'entirely unresponsive,' defendant's failure to respond is considered willful." *PJF Trucking*, 2014 U.S. Dist LEXIS 134095 at *12. Also, the Court is unable to determine if there is a meritorious defense because they failed to raise any defense. *See id.* at *7. Finally, denial of the motion for default judgment would prejudice Plaintiff because there is no other method by which it can obtain relief from the Court. *See Builders Dist. Council Welfare, Pension, Annuity and Apprenticeship, Skill Improvement and Safety Funds v. JREM Const. Corp.*, 2013 WL 61873, *4 (E.D.N.Y. Jan. 28, 2013).

**III.    Costs**

Plaintiff also seeks an award of costs consisting of $136.74 for service of process fees,

$350.00 for filing fee under 28 U.S.C.§§ 1914 and 1920, and docket fees of $20.00 under 28 U.S.C.§§ 1920 and 1923.

Costs generally include "reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir.1998). Where those costs have not been paid (e.g., filing fees by the United States of America in civil actions)[2] they are typically unrecoverable, *see*, *e.g.*, *U.S. v. Anthony*, 2010 WL 681359, at *2 (N.D.N.Y. Feb.24, 2010) ("The docket does not reflect that the Plaintiff paid a filing fee. Accordingly, the Court will not award costs at this time."); *accord, U.S. v. Maye*, 2010 WL 681396, at *2 (N.D.N.Y. Feb.24, 2010).

Plaintiff has submitted no evidence that it paid either a filing fee or a docket fees and accordingly those costs will not be awarded. Therefore, only the $136.74 for service of process fees is recoverable.

## CONCLUSION

Plaintiff's motion for a default judgment is granted. The Clerk of Court is directed to enter judgment in the amount of $72,882.37, plus costs in the amount of $136.74 and to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
       May 4, 2016                               /s   Denis R. Hurley
                                                                 Denis R. Hurley
                                                                 District Judge

---

[2] *See U.S. v. Bennett*, 2010 WL 185105, at *3, n. 1 (M.D. Fla. Jan.19, 2010) ("Clerks of the United States District Courts normally do not require the United States, as a party in any civil action, to pay a filing fee.") Indeed, the Administrative Office of the Courts directs Clerks Offices not to charge the United States filing and docket fees and in accordance with that directive such fees are not charged to the United States in this District.